IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| GARY WALKER and WALKER HOME #4, LLC, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 1:22-CV-350-MAC-CLS |
| CENTURY SURETY COMPANY, | § § § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION
ON DEFEENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. TEX. LOCAL R. CV-72. Pending before the court is Defendant's Motion for Summary Judgment. (Doc. #24.) After review, the undersigned recommends granting the motion.

**I.    Background**

This case involves a dispute over an insurance policy alleged to cover damages from Hurricane Laura. Plaintiffs filed their original petition in state court on August 5, 2022, alleging claims against Defendant Century Surety Company ("Century"), including breach of contract, breach of the common law duty of good faith and fair dealing, and violations of the Texas Insurance Code. (Doc. #3.) This case was removed to federal court on August 24, 2022, based on diversity jurisdiction. (Doc. #1.)

Defendant filed a Motion for Summary Judgment on May 31, 2023. (Doc. #24.) Plaintiffs responded on June 21, 2023. (Doc. #29.) Defendant replied on June 27, 2023. (Doc. #30.) This matter is now ripe for review.

The following undisputed facts are relevant to determining whether Defendant is entitled to summary judgment.

Plaintiffs' property sustained damage[1] from Hurricane Laura on or about August 27, 2020. (Doc. #24 at 13.) Colonial Claims inspected the property on Defendant's behalf on September 9, 2020, and reported that a portion of the roof was damaged by the hurricane and that damage was covered by the policy. (Doc. #24 at 13.) Defendant paid Plaintiff $2,212.34 on October 16, 2020, based on Colonial Claims' inspection. (Doc. #24 at 13.) Van Fisher, an engineer with Envista Forensics, then inspected the interior of the property on Defendant's behalf on October 14, 2020, to determine the cause of the interior damage observed by Colonial Claims. (Doc. #24 at 14.) Fisher reported that there was some covered interior damage caused by a leak from a storm-created opening in the roof. (Doc. #24 at 14.) However, Fisher further reported that there was other interior damage caused by existing water leaks not attributed to the hurricane and thus not covered by the policy. (Doc. #24 at 14.) Defendant then paid Plaintiff an additional $485.05 on November 18, 2020, based on Fisher's inspection. (Doc. #24 at 14.) Defendant included a letter with the November 18, 2020, payment explaining why it had not paid for all of the observed interior water damage. (Doc. #24 at 14.)

On May 21, 2022, Plaintiffs sent Defendant a pre-suit demand, alleging that Defendant owed additional payment to Plaintiff for covered damage beyond what had been paid thus far.

---

[1] Neither party disputes that the property sustained damage from the hurricane. Rather, the parties disagree as to the scope and amount of damage.

2

(Doc. #24 at 14-15.) Plaintiffs' demand included an estimate prepared by Nikki Seals[2] of Damage Reports LLC reporting approximately $291,376.70 of damage to the property. (Doc. #24 at 14-15.) Van Fisher then re-inspected the property, accompanied by a representative for Plaintiff who observed Fisher's inspection, on August 16, 2022. (Docs. #24 at 15, #29 at 5.) Fisher's report affirmed the findings from his first inspection, which, in relevant part, concluded that while one portion of the roof (observed in his first inspection) was damaged from the hurricane, a different portion of the roof was damaged, but not by the hurricane, and thus neither the damage to that different portion of the roof nor the interior water damage attributable to it was covered by the policy. Plaintiffs state that Eric Foshee, their representative who observed Fisher's re-inspection, did not prepare his own report of the damages or conduct his own inspection. (Doc. #29 at 5.) At Plaintiffs' Counsel's request, however, Foshee reviewed Fisher's second report and provided his "thoughts" to Plaintiffs' Counsel via email on October 4, 2022, which reads as follows:

> It was confirmed that the damaged roof was not associated or a result from the hurricane. However, the interior damage was confirmed to be directly associated with hurricane damage. The water stained acoustic ceiling tiles, near the AC plenums, were a result from wind driven rain being forced through AC ducts and then flowing to the tiles below. The water stained ceiling tiles and light fixtures in the south hallway were proven to be the direct result from a leak, occurring from an attic space air conditioning unit. This leak was a cause from wind driven rain as well. Therefore, the tiles and light fixtures in the office were identified as hurricane damage.
>
> In conclusion, the interior damage was directly associated with wind driven rain that was forced into the AC system, which then leaked down to the ceiling tiles in several areas of the interior below. Any and all water damage throughout the interior of the property can then only be confirmed as a cause from Hurricane Laura and must be repaired back to the original pre-storm condition.

(Doc. #24-14 at 16-17.)[3]

---

[2] Seals has also been designated as a non-retained expert by Plaintiffs. (Doc. #24-18.)

[3] Although Foshee, in his email, states that the damage was "caused" by Hurricane Laura, causation is a term of art defined by what are considered "covered" damages under Plaintiffs' insurance policy, and it is not clear from the email that Foshee's use of the term "cause" necessarily aligns with the definition of covered damages under the policy

3

## II. Legal Standard

Summary judgment should only be granted if the moving party can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). A fact is material when it is relevant or necessary to the ultimate conclusion of the case. *Id.* at 248. The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Chambers v. Sears, Roebuck and Co.*, 428 Fed. App'x 400, 407 (5th Cir. 2011) (citing *Duffy v. Leading Edge Products Inc.*, 44 F.3d 308, 312 (5th Cir. 1995)).

Once the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.*, 477 U.S. at 255. However, the non-movant may not rest on mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial. *Toney v. United States*, 273 Fed. App'x 384, 385-86 (5th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 248-49). The court must consider all the evidence but refrain from making

---

at issue here. Specifically, the policy only covers interior damage from wind-driven rain that entered through a *storm-created* opening. Foshee's email suggests that some or all of the disputed interior water damage entered through the "AC ducts," which may not be considered a storm-created opening as defined by the policy.

any credibility determinations or weighing the evidence. *Lindquist v. City of Pasadena*, 669 F.3d 225, 232-33 (5th Cir. 2012) (quoting *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)).

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996)). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Hugh Symons Group*, 292 F.3d at 468 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). The party opposing summary judgment is required to identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citing *Forsyth*, 19 F.3d at 1537). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Infante v. Law Office of Joseph Onwuteaka, P.C.*, 735 Fed. App'x 839, 843 (5th Cir. 2018) (citation omitted); *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992); Fed. R. Civ. P. 56(c)(3) ("[T]he court need consider only the cited materials."). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**III.   Discussion**

  A.  Breach of Contract Claim

To recover under an insurance policy, the insured must establish that the alleged damages are covered by the policy. *Sheffield v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:17-cv-00471-O-

5

BP, 2018 WL 4076513, at *2 (N.D. Tex. July 3, 2018) (quoting *Emps. Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *overruled in part on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996)). Plaintiffs allege the property sustained roof damage from Hurricane Laura and the roof damage allowed water to enter the property, causing additional covered interior damage beyond what Defendant has paid. (Doc. #29 at 4.) Defendant argues that the unpaid roof damage was not caused by Hurricane Laura, thus the roof and interior water damage are not covered by the insurance policy. (Doc. #24 at 7.) In seeking summary judgment, Defendant contends that Plaintiffs cannot demonstrate that there is a genuine issue of material fact as to whether there are any covered damages to Plaintiffs' property for which Defendant has not paid, thus it is entitled to summary judgment on Plaintiffs' breach of contract claim.

In support of its summary judgment motion, Defendant points to the damage estimate reports from Fisher and Colonial Claims, which indicate that only a portion of the damage observed at the three inspections was covered by the policy, and Defendant made payments for that damage. Defendant also argues that Foshee's email to Plaintiffs' Counsel supports this position.

Plaintiffs have designated Nikki Seals as a non-retained expert in this case who, they contend, will testify regarding "cost and causation, scope of estimated costs for repair and/or replacement of the damage to Plaintiffs' property and related matters." (Doc. #24-18.) Seals is employed by Damage Reports LLC and is an expert in the field of residential and commercial roofing. (Doc. #24-18.) Defendant has not challenged Seals' qualifications as an expert or the admissibility of her expert report under Rule 702 of the Federal Rules of Evidence or Rule 26 of the Federal Rules of Civil Procedure.[4]

---

[4] The requirements for non-retained expert disclosures under Rule 26(a)(2) are less stringent than the requirements for retained experts.

6

Defendant does argue, however, that Seals' report is not competent summary judgment evidence. Defendant observes that the report is "undated," "does not reference wind or hurricane," and has "no narratives," and it is "unclear when, how, or why" Seals' estimate was prepared (Doc. #24 at 7, 8, 22-23). Defendant further argues that, due to this missing information, it is not even apparent from the estimate that Seals was evaluating hurricane damage at the property. (Doc. #24 at 23.) Defendant cites to cases such as *Stagliano v. Cincinnati Ins. Co*, 633 Fed. App'x 217 (5th Cir. 2015) and *Young v. Allstate*, No. 4:17-CV-87, 2017 WL 5890128 (E.D. Tex. Nov. 29, 2017) [hereinafter *Stagliano II*], as support for its argument that Seals' estimate is insufficient to create a genuine issue of material fact on causation. The undersigned agrees.

In *Stagliano*, the Fifth Circuit affirmed the district court's finding that an expert's affidavit was not sufficient to create a genuine dispute of material fact. The district court found that the affidavit was unsupported because the weather event (a hailstorm) occurred in May 2011, whereas the expert report was authored in 2014 based on "damage [the expert] witnessed in 2014," and the report failed to include the necessary factual support linking the damage to the storm that occurred over three years prior. *Stagliano v. Cincinnati Ins. Co.*, No. 3:13-cv-2474-O, 2014 WL 11332295, at *3 (N.D. Tex. Dec. 9, 2014) [hereinafter *Stagliano I*]. The expert's failure to sufficiently link the 2014 damage he observed to the 2011 hailstorm rendered it too unsubstantiated and conclusory to establish a genuine issue of material fact that it was the 2011 hailstorm, as opposed to some other storm, that caused the hail damage.

Similarly, the central factual issue on summary judgment in *Young* was whether the alleged water loss damage was caused by a "sudden and accidental loss." 2014 WL 5890128, at *2. The defendant in *Young* argued that the damage was not caused by a sudden and accidental loss because it occurred over an extended period of time. *Id.* The plaintiff asserted that the damage was caused

7

by a broken drain pipe rather than "long-term seepage." *Id.* The court determined that the only evidence to support the plaintiff's position on causation was its expert's assertion in an affidavit that "it is so," thus the affidavit was insufficient to establish a genuine issue of material fact that the damage was caused by a sudden and accidental loss.

Seals' report is nothing more than a series of photographs and cost estimates for repairing various line items. (Doc. #24-19.)[5] This is not sufficient to carry Plaintiffs' summary judgment burden of demonstrating a genuine issue of material fact. Expert reports from adjusters, inspectors, engineers, and other industry professionals are sufficient to create a genuine issue of material fact *when* those experts provide specific opinions on causation through, for example, narratives in the report, declarations, and affidavits. *See, e.g.*, *Garcia v. State Farm Lloyds*, 629 F. Supp. 3d 504, 507-08 (N.D. Tex. 2022) (finding that the plaintiff had produced sufficient evidence to create a genuine issue of material fact by relying on his retained causation expert who concluded, after inspecting the property, "[t]he cause of loss is hail and wind damage); *Nasti v. State Farm Lloyds*, No. 4:13-CV-1413, 2015 WL 150468, at *1, *3 (S.D. Tex. Jan. 9, 2015) (finding a genuine issue of fact as to causation and damages from the plaintiff's adjuster's expert report, photographs, and declaration which specifically opined, *inter alia*, that the "roof was damaged by the severe wind and hail storm"); *Armstrong v. AmGuard Ins. Co.*, No. 1:22-CV-234-MAC-CLS, 2023 WL 3297122, at *4 (E.D. Tex. Apr. 14, 2023), *R&R adopted*, 2023 WL 3292892 (May 4, 2023).

An estimate, such as Seals' report, that merely describes observed damage with no reference to the cause of that damage is not sufficient to carry Plaintiffs' summary judgment burden. *See, e.g.*, *Underwood v. Allstate Fire & Cas. Ins. Co.*, No. 4:16-cv-00962-O-BP, 2017

---

[5] Plaintiffs' only other "evidence" related to causation appears to be the email comments of Eric Foshee. (Doc. 24-14 at 16-17). However, Foshee's comments do not provide any support for Plaintiffs' position that the property damage in dispute is attributable to a storm-created opening. Rather, Foshee's comments indicate the disputed damage was the result of water entering through an already-existing and/or non-storm-created opening, namely the "AC ducts."

8

WL 4466451, at *3 ("An estimate is only a description of existing damage, which could have resulted from any number of events that occurred prior to the date of the estimate. . . . Generically noting a disparity in monetary estimates does not provide the required particularity needed for allocation or causation"); *see also, e.g.*, *Stagliano II*, 633 Fed. App'x at 220-21; *Young*, 2014 WL 5890128, at *2.

Plaintiffs' only other evidence related to causation is the email comments of Eric Foshee (doc. #24-14 at 16-17) and the affidavit of Plaintiff Gary Walker (doc. #29-2 at 2), neither of which are sufficient competent summary judgment evidence to create a genuine issue of fact on causation. First, Foshee's comments do not provide any support for Plaintiffs' position that the property damage in dispute is attributable to a storm-created opening. Rather, Foshee's comments indicate the disputed damage was the result of water entering through an already-existing and/or non-storm-created opening, namely the "AC ducts." Similarly, the affidavit of Gary Walker in which Walker, a lay witness and plaintiff in this suit, states that Hurricane Laura is the "only explanation" for the damage he observed to the property is insufficient to carry Plaintiffs' burden. As discussed *supra* note 3, the lay opinions in Walker's affidavit that Hurricane Laura "caused" the entirety of the damage to the property does not necessarily align with the insurance policy's definition of covered damages. The affidavit does not distinguish between damage caused by storm-created openings (covered under the policy) and non-storm-created openings—nor is Plaintiff qualified to distinguish between such damage—which is the critical issue on causation in this suit.[6] Expert

---

[6] The only support Plaintiffs have provided for their contention that "Plaintiff Gary Walker's affidavit is evidence of causation as to covered damages caused by Hurricane Laura" (doc. #29 at 6-7) is *Greater Hall Temple Church of God v. Southern Mut. Church Ins. Co.*, 920 Fed. App'x 915 (11th Cir. 2020), an unpublished Eleventh Circuit case that is neither binding nor directly on point for this issue. In *Greater Hall*, the Eleventh Circuit reversed the district court's grant of summary judgment, holding that the plaintiff had carried its burden of demonstrating a genuine issue of fact as to causation through the lay testimony of people who observed damage to the property after the storm. *Id.* at 921-923. The lay testimony in *Greater Hall*, however, differs from Walker's affidavit. First, the plaintiff in *Greater Hall* provided testimony from at least three separate lay witnesses, and they provided far more information than what Walker provides in the six sentences in his affidavit discussing the "cause" of the damage he observed. *Id.* at 922.

testimony is not *necessarily* required under Texas law to prove causation for storm damage. *See, e.g.*, *Heller v. Ace European Grp. Ltd.*, No. 7:12-CV-422, 2013 WL 6589253, at *3 (S.D. Tex. Dec. 16, 2013) (citation omitted). However, neither the conclusions of Foshee nor the affidavit of Gary Walker provide support for Plaintiffs' position that there was, allegedly, additional covered damage *as defined under the policy* which Defendant refused to pay. As they fail to address the critical distinction between "covered" damage as defined by the policy and damage that was "caused" by Hurricane Laura but not necessarily covered by the policy (such as water entering through the AC ducts) Plaintiffs' non-expert evidence is insufficient to carry their summary judgment burden.

Plaintiffs have failed to demonstrate there a genuine issue of material fact as to causation. Thus, Defendant is entitled to summary judgment on Plaintiffs' breach of contract claim.

### B. Extracontractual Claims[7]

As a general rule, an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018). As Plaintiffs have failed to create a genuine issue of material fact to maintain their breach of contract claims, Plaintiffs only potential grounds for recovery on any extracontractual claims is under the independent-injury rule. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (citations omitted). However, all of Plaintiffs' extracontractual claims are "predicated on," "flow from," or "stem from" Plaintiffs' alleged

---

Second, one of the lay witnesses in *Greater Hall* personally constructed the roof that was allegedly damaged by the hurricane, which was significant under Georgia law for the purposes of whether lay testimony could support causation as summary judgment evidence on insurance cases. *Id.* at 923.

[7] Plaintiffs have asserted extracontractual claims for common law bad faith and violations of Chapter 541 and 542 of the Texas Insurance Code. (Doc. #4 at 9-13.) "Under Texas Law, extracontractual tort claims pursuant to the Texas Insurance Code . . . require the same predicate for recovery as bad faith causes of action." *Watson v. State Farm Lloyds*, 56 F. Supp. 2d 734, 736 (N.D. Tex. 1999) (internal quotation omitted) (citing *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997)).

entitlement to policy benefits from Defendant (doc. #3 at ¶¶ 15-19, 22-27, 33),[8] thus the independent-injury rule does not apply to those claims. *Menchaca*, 545 S.W.3d at 499-500; *see also Underwood*, 2017 WL 4466451, at *5-6 (applying *Menchaca* to the plaintiff's extracontractual claims—identical to Plaintiffs' extracontractual claims in this suit—and finding the independent-injury rule did not apply); *Toccoa LTD v. N. Am. Roofing Servs., LLC*, No. 1:21-CV-00313-MJT, 2023 WL 4401545, at *10-11 (E.D. Tex. June 8, 2023), *R&R adopted*, 2023 WL 4106440 (June 21, 2023) (same). Moreover, Plaintiffs make no attempt in their response (doc. #29) to identify any alleged independent injury or offer evidence thereof.

Thus, Defendant is entitled to summary judgment on Plaintiffs' extracontractual claims.

## IV.     Conclusion

Plaintiffs have failed to carry their burden to maintain their breach of contract claim against Defendant. Additionally, Plaintiffs' extracontractual claims fail as a matter of law as they are all predicated on Plaintiffs' alleged entitlement to unpaid policy benefits from Defendant. Thus, Defendant is entitled to summary judgment on all of Plaintiffs' claims, and this suit should be dismissed in its entirety.

## V.     Recommendation

For the foregoing reasons, the undersigned recommends **GRANTING** Defendant's Motion for Summary Judgment (doc. #24) and **DISMISSING** all claims against Defendant.

---

[8] To the extent Plaintiffs may argue that certain aspects of their extracontractual claims (doc. #3 at ¶¶ 17, 18, 24, 25) are not predicated on an alleged entitlement to additional policy benefits, Plaintiffs have provided no summary judgment evidence to support an independent injury for those claims. For example, Plaintiffs allege that Defendant failed "to notify Plaintiffs in writing of its acceptance or rejection of Plaintiffs' claim" (doc. #3 at ¶ 18) and that Defendant failed to "affirm or deny coverage of Plaintiffs' claim in a reasonable time (doc. #3 at ¶ 25). However, the undisputed summary judgment evidence disproves these allegations. (Docs. #24 at ¶¶ 26, 27, 30; 29 at ¶¶ 26, 27, 30.) Thus, even if the undersigned determined that these claims were not predicated on an alleged entitled to additional policy benefits, Defendant would still be entitled to summary judgment on these extracontractual claims based on the undisputed facts.

**VI.     Objections**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 17th day of July, 2023.**

_____

Christine L Stetson
UNITED STATES MAGISTRATE JUDGE